IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| LUCY JOLLY, ) | Civil Action No. 3:07-3828-PMD-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On December 31, 2001, Plaintiff applied for SSI and for DIB. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held January 29, 2004, at which Plaintiff appeared and testified, the ALJ issued a decision dated May 25, 2004, denying benefits. On January 25, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed an action in this Court on March 17, 2005 (Civil Action 3:05-833-PMD-JRM). On September 27, 2006, the Honorable Patrick Michael Duffy, United States District Judge, ordered that the Commissioner's decision be reversed and the case remanded to the Commissioner for further proceeding consistent with the order. A supplemental hearing was held

before an ALJ on July 5, 2007,[1] and he issued a second decision denying Plaintiff's application for benefits on August 16, 2007, finding that Plaintiff was not disabled prior to January 2005.[2] The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was fifty one years old at the time she alleges she became disabled. She has a ninth grade education and past relevant work as a bookkeeper, cashier, restaurant server, and gas station attendant. Plaintiff alleges disability since October 1, 2001, due to back pain, bulging and collapsed discs in her lower back, degenerative joint disease, irritable bowel syndrome, gastroesophageal reflux disease (GERD), gastroparesis, depression, and anxiety.

The ALJ found (Tr. 415-424):

1.  The claimant met the insured status requirements of the Social Security Act through September 30, 2006.

2.  The claimant has not engaged in substantial gainful activity since October 1, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: arthritis, chronic back pain, depression, irritable bowel syndrome, gastroesophageal reflux disease (GERD), and chronic obstructive pulmonary disease (COPD) (20 CFR §§ 404.l520(c) and 416.920(c).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[1] Plaintiff did not testify at the hearing, as she was undergoing treatment for pancreatic cancer. There is no indication (and she does not argue otherwise) that her unfortunate diagnosis in approximately May 2007 (see Tr. 601-602 and Plaintiff's Brief at 18) relates to the relevant time period at issue here.

[2] Prior to the ALJ's second decision, Plaintiff reapplied for DIB and SSI and was granted benefits as of January 2005, the month she turned fifty-five years old.

> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work except that she may not climb ladders, ramps, and scaffolds. By reason of her mental impairment, she is further restricted to simple, routine work in a low-stress environment (which I define as requiring few decisions), requiring no more than occasional interaction with the general public and no team effort or ongoing interaction with co-workers.
>
> 6.  The claimant is unable to perform any of her past relevant work (20 CFR 404.l565 and 416.965).
>
> 7.  The claimant was born on January 30, 1950, and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.l563 and 416.963). She is now 57 years old.
>
> 8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, from October 1, 2001, through December 31, 2004.(20 CFR 404.l520(g) and 416.920(g)).

Plaintiff filed this action in this Court on November 26, 2007.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner,

Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## MEDICAL EVIDENCE

At issue here is whether Plaintiff is eligible for benefits for the time period of October 1, 2001 to December 31, 2005. She has not raised any arguments concerning the ALJ's conclusions about her impairments, credibility, or residual functional capacity ("RFC").[3]

During the relevant time period, Plaintiff received ongoing medical treatment for a number of impairments, including musculoskeletal, respiratory, gastrointestinal, cardiovascular, and psychological disorders. See Tr. 133-327, 497-502. In October 2003, primary care physician Dr. Julie Holschen opined that Plaintiff should "avoid repetitive activities" with her wrists and hands.[4] Tr. 259. No other treating or examining physician assessed any other physical functional limitations during the relevant time period.

State agency physicians Dr. Robert D. Kukla (in September 2002) and Dr. Joyce Lewis (in February 2002) reviewed the medical records and each concurred that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently; stand/walk and sit about six hours each in an eight-

---

[3]As such, Plaintiff's medical records are only briefly summarized here. The ALJ has provided an adequate discussion of Plaintiff's medical and non-medical evidence in his decision. See Tr. 418-422.

[4]The ALJ did not find this suggestion to be supported by objective clinical findings or persuasive in evaluating Plaintiff's functional capacity for a duration consistent with the definition of disability. See Tr. 422-423.

4

hour workday; occasionally climb ramps and stairs; and frequently climb ladders, ropes, or scaffolds; and could frequently balance, stoop, kneel, crouch, and crawl. Tr. 209-216, 239-246. Dr. Lisa Smith Klohn, a State agency psychologist, reviewed Plaintiff's medical records in March 2002 and opined that Plaintiff had affective and somatoform disorders that caused moderate limitations in her daily activities, social functioning, and concentration, and no more than moderate limitations in specific work-related areas. Tr. 221-238.

Dr. E. W. Alford, Plaintiff's treating psychiatrist, opined in November 2003 that Plaintiff had moderate limitations in her daily activities, social functioning, and concentration, but that her disability was primarily medical and her major depressive disorder certainly complicated her ability to work as well, but was not the primary cause of disability. Tr. 327. No other treating or examining mental health provider assessed any psychological or cognitive functional limitations during the relevant time period.

## **HEARING TESTIMONY**

At the first hearing, Plaintiff testified that she lived with her son and his wife, who did almost everything for her. She stated that she did not drive due to the nine or ten medications she took and their side effects. Plaintiff claimed that her back pain and joint pain was so severe she could not bathe or dress herself, she needed help brushing her hair, putting toothpaste on her toothbrush, and washing her clothes. She testified that she had problems with comprehension, had suicidal thoughts and hallucinations, and was very emotional depressed. Her son testified that he had to do pretty much everything for Plaintiff and that she could not be around other people. Tr. 382-396.

**DISCUSSION**

Plaintiff alleges that the Commissioner erred by relying upon the framework of Medical-Vocational Guidelines (also know as the "Grids") at Grid Rule 202.11[5] to direct a finding of not disabled rather than relying upon the framework of Grid Rule 201.10[6] to direct a finding of disabled. The Commissioner contends that substantial evidence[7] supports the Commissioner's final decision that Plaintiff was not disabled, Plaintiff's RFC for light-exertion work with certain nonexertional restrictions does not fall between the exertional categories of sedentary and light work, and the fact that the number of jobs identified by the VE were less than the total number of jobs encompassed by the entire unskilled sedentary occupational base is inconsequential.

The ALJ's determination that Plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy for the period prior to December 31, 2004" (Tr. 424) is supported by substantial evidence and correct under controlling law. In his decision, the ALJ specifically considered Grid Rule 202.11, considered SSRs 83-12 and 83-14, determined that VE testimony was necessary, and (using the Grids as a framework) determined that

---

[5] Grid Rule 202.11 indicates that a claimant who is closely approaching advanced age (50 to 54 years old) with a limited education, past semi-skilled or skilled work, no transferrable skills, and the RFC for light unskilled work is not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.11.

[6] Grid Rule 202.10 indicates that a claimant who is closely approaching advanced age, with a limited education, past semi-skilled or skilled work, no transferrable skills, and the RFC for sedentary unskilled work is disabled. See 20 C.F.R. Pt. 404., Subpt. P, App. 2, § 202.10.

[7] Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

6

there were a significant number of jobs which Plaintiff could perform. Tr. 423-424. At the second hearing, the ALJ asked the VE to consider a claimant of Plaintiff's age, education, and work background who was limited to simple routine work, a low stress environment defined as requiring few decisions, no more than occasional interaction with the public, no team effort or no close working relationship with employees or co-workers, and no use of ladders, ropes, or scaffolds. Tr. 611-612. In response, the VE testified that such an individual would be able to perform the jobs of garage attendant (1,100 job in South Carolina and 250,000 in the United States), security guard (1,300 in South Carolina and 300,000 in the United States) and assembler/bundler (3,000 in South Carolina and 400,000 in the United States.[8] Tr. 612-614.

There is no indication that Grid Rule 202.10 (rather than Rule 201.11) is applicable here. Rule 202.10 applies when a claimant's exertional impairments limit her to sedentary work. Plaintiff argues that because she has nonexertional[9] limitations, her residual functional capacity falls between the light and sedentary levels and the ALJ should have used the sedentary Grid rule (201.10) as a framework for decision-making, rather than the light Grid rule (202.11). The requirements of SSR 83-12 for using a lower exertional level Grid rule, however, only apply when the claimant's

---

[8]The Fourth Circuit Court of Appeals has found that 110 jobs does not constitute an insignificant number of jobs. Hicks v. Califano, 600 F.2d 1048 (4th Cir. 1979). The Eighth Circuit found that 500 jobs was a significant number in Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988); the Eleventh Circuit held that 174 locally and 1600 statewide constituted a significant number in Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987); and the Tenth Circuit, refusing to draw a bright line, found that 650-900 jobs was a significant number in Trimiar v. Sullivan, 966 F.2d 1326, 1330-32 (10th Cir. 1992).

[9]A nonexertional impairment or limitation does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull (all of which are considered exertional abilities). Nonexertional impairments and limitations affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use the fingers for fine activities. See SSR 83-10 and 20 C.F.R. § 404.1569a.

7

exertional limitations fall somewhere between two exertional categories.[10] Here, the ALJ specifically found that Plaintiff could perform light work and the only additional exertional restrictions were to not climb ropes, ladders, or scaffolds which do not significantly erode the occupational base for light work.[11]

Plaintiff, citing Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989),[12] also argues that because the VE testified that the number of light, unskilled jobs she could perform was less than the total number of unskilled sedentary jobs available,[13] the ALJ should have used the sedentary Grid Rule (Rule 201.10) as a framework for decision-making and should have found her disabled. There is no indication that the Fourth Circuit (or any other Circuit) has adopted Swenson. Further, Plaintiff

---

[10]SSR 83-12 provides that:
> [w]here an individual's exertional [residual functional capacity] does not coincide with the definition of any one of the ranges of work as defined in...the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and assess its significance.

Id. This ruling further provides that if a claimant's exertional capacity falls between the exertional levels of two Grid rules which direct opposite conclusions then the ALJ must decide whether the claimant's exertional limitations are reduced enough to warrant application of the Grid rule for the lower exertional level. If the claimant's exertional limitations are somewhere in the middle of the two rules, the ALJ must obtain vocational assistance which requires a specific evaluation of the size of the claimant's remaining occupational base.

[11]Social Security Ruling 83-14 provides that the inability to ascend or descend scaffolding, poles, and ropes would not significantly affect the potential unskilled light occupational base. The ruling also notes that light work necessarily involves only occasional bending and stooping.

[12]In Swenson, the Ninth Circuit reversed the decision of the Secretary of Health and Human Services because the Secretary failed to specify adequate reasons for rejecting the claimant's testimony of fatigue and the VE's testimony was inconsistent with the framework created by the Grids. Swenson v. Sullivan, 876 F.2d at 688-689.

[13]Plaintiff's attorney asked the VE to compare the number of light jobs the VE identified against all of the jobs available to a claimant who was limited to the full range of unskilled sedentary work. The VE stated that there was a larger range of unskilled sedentary work than the number of jobs he identified in response to the ALJ's hypothetical. Tr. 614-615.

has not shown that the regulations or ruling require that an ALJ compare the size of the job numbers cited by a VE with the size of the occupational base for a lower exertional category of work. See Williams v. Chater, 110 F.3d 72, *1 (9th Cir. 1997)(unpublished)(finding that the ALJ did not err in finding claimant not disabled based on the VE's testimony, noting that the "fundamental inquiry is whether substantial work is available, not the manner in which a claimant hypothetically compares to the grids," and noting that the VE's testimony regarding the available jobs was credible in contrast to that of the VE's testimony in Swenson).

Plaintiff argues that SSR 83-14 and POMS DI 25025.001[14] direct that the sedentary Grid rule should have been used. Such a conclusion, however, ignores the introduction to the Grids which provides that where there are nonexertional limitations the Grids are only used as a framework for decision-making and a VE is typically utilized to established whether the claimant can perform jobs existing in significant numbers in the national economy. See 20 C.F.R., Pt. 404, Subpt. P, App. 2, §§ 200.00(a)(d) and (e). Further, SSR 83-14 applies to cases involving both exertional and nonexertional limitations. It provides instruction as to when consultation with a VE is necessary to determine the plaintiff's occupational base. SSR 83-14. Here, having determined that Plaintiff had

---

[14]POMS DI 25025.001 (Application of Medical-Vocational Rules) provides, in part:
**3. COMBINATION OF EXERTIONAL AND NONEXERTIONAL LIMITATIONS**
*** 
b. If a rule directing a decision of "not disabled" would be met considering only the exertional limitations(s):
.     The additional effects of the nonexertional limitation(s) are considered.
.     If the nonexertional limitaiton(s) have only a minimal impact, a conclusion of "not disabled" is ordinarily warranted.
.     Where there is more than minimal erosion, it is necessary to define the approximate size of the remaining occupational base which, when considered with the rest of the vocational profile, leads to the applicable rule(s) that guides the decision.
POMS DI25025.001(B)(3).

9

both exertional and nonexertional limitations, the ALJ appropriately consulted with a VE to determine whether Plaintiff could still perform jobs existing in numbers the ALJ found significant.

## **CONCLUSION**

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence or was not correct under controlling law. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

February 25, 2009
Columbia, South Carolina

10