## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

LUCY B. JOLLY,                    )
                                  )
                Plaintiff,        )
                                  )        C.A. No.: 3:07-3828-PMD-JRM
        v.                        )
                                  )
MICHAEL J. ASTRUE,                )        **ORDER**
Commissioner of Social Security   )
Administration,                   )
                                  )
                Defendant.        )
_____)

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the Commissioner of Social Security's final decision, which denied Lucy Jolly's ("Jolly" or "Plaintiff") claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The record includes a Report and Recommendation ("R & R") of United States Magistrate Judge Joseph R. McCrorey, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 83.VII.02, *et seq.*, recommending that the administrative law judge's decision, which denied Plaintiff's claim for DIB and SSI, be upheld because it was a correct application of law and was supported by substantial evidence. Plaintiff timely objected to the Magistrate Judge's recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that party may object, in writing, to a Magistrate Judge's R & R within ten days after being served with a copy).

## BACKGROUND

Plaintiff is a fifty-nine year old woman with a ninth grade education and past work experience as a bookkeeper, cashier, restaurant server, and gas station attendant. Plaintiff alleges that she became disabled as of October 1, 2001, at which time she was fifty-one years old, due to back pain, bulging and collapsed discs in her lower back, degenerative joint disease, irritable bowel

syndrome, gastroesophageal reflux disease (GERD), gastroparesis, depression, and anxiety.

During the time period in question, Plaintiff was treated on a frequent basis at a number of medical centers by a number of different physicians. She was treated for a variety of musculoskeletal, gastrointestinal, cardiovascular, and psychological disorders. During this time, in October 2003, Plaintiff's primary treating physician, Dr. Julie Holschen, M.D., gave an opinion that Plaintiff should "avoid repetitive activities" with her wrist and hands. No other physician assessed Plaintiff's functional capabilities or limitations during this time period.

Two separate State agency physicians, Drs. Robert D. Kukla, M.D., and Joyce Lewis, M.D., assessed Plaintiff's medical records, and both gave the opinion that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand, walk, and sit around six hours each in an eight-hour workday; occasionally climb ramps and stairs; and frequently climb ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, and crawl.

Plaintiff's treating psychiatrist, Dr. E.W. Alford, M.D., gave the opinion that she had moderate limitations in social functioning and daily activities, which inhibited her ability to work, but that the primary cause of any disability Plaintiff had was primarily medical, not psychiatric, in nature. A State agency psychologist, Dr. Lisa Smith Klohn, Ph. D., reviewed Plaintiff's medical records and concluded that Plaintiff had affective and somatoform disorders that caused moderate limitations in daily activities, social functioning, and concentrating, but which caused no more than moderate limitations in her work capabilities.

Plaintiff filed a claim for DIB and SSI on December 31, 2001, alleging that she had been disabled as of October 1, 2001. Her initial application was denied, so she requested a reconsideration of that decision, which was also denied. Plaintiff then appealed this decision to be

heard by an Administrative Law Judge. Plaintiff was granted a hearing before Administrative Law Judge Albert Reed ("the ALJ"), which was held on January 29, 2004. Plaintiff appeared and testified at this hearing. On May 25, 2004, the ALJ issued his decision in the case, denying Plaintiff DIB and SSI. Plaintiff appealed this decision, but the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the Commissioner's final determination.

Plaintiff then filed a Complaint in this Court on March 17, 2005, claiming that the ALJ's decision was not supported by substantial evidence and was an erroneous application of the law. In an Order dated September 27, 2006, this Court remanded the matter back to the ALJ for further proceedings, holding that substantial evidence did not support the ALJ's determination that Plaintiff could use her hands on a frequent basis, and that the ALJ had incorrectly found that Plaintiff was a "younger individual" under the relevant rules and regulations. *Jolly v. Barnhart*, 465 F. Supp. 2d 498 (D.S.C. 2006).

On remand, a supplemental hearing was held before the ALJ on July 5, 2007. At that time, Plaintiff had recently been diagnosed with pancreatic cancer, and chose not to testify at the hearing, although her attorney appeared on her behalf. The ALJ issued a second decision on August 16, 2007, again denying Plaintiff's claim for DIB and SSI. The ALJ, based upon the entirety of the record, the testimony of a VE which concluded that work exists in the national economy which Plaintiff could perform, determined that Plaintiff was not disabled prior to January 2005.[1]

In his decision, the ALJ made the following findings:

---

[1] In a subsequent proceeding, Plaintiff was found to be disabled as of January 2005, due to a worsening of her conditions and the onset of several new conditions. Therefore, it is not disputed that as of January 2005, Plaintiff was disabled and entitled to DIB and SSI. The only issue before the Court in this case, then, is whether or not Plaintiff was disabled and entitled to DIB and SSI from October 2001-December 2004.

3

1.    The claimant met the insured status requirements of the Social Security Act through September 30, 2006.

2.    The claimant has not engaged in substantial gainful activity since October 1, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: arthritis, chronic back pain, depression, irritable bowel syndrome, gastroesophageal reflux disease (GERD), and chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work except that she may not climb ladders, ramps, and scaffolds.  By reason of her mental impairment, she is further restricted to simple, routine work in a low-stress environment (which I define as requiring few decisions), requiring no more than occasional interaction with the general public and no team effort or ongoing interaction with co-workers.

6.    The claimant was unable to perform any past relevant work during the period at issue (20 CFR 404.1565 and 416.965).

7.    The claimant was born on January 30, 1950, and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).  She is now 57 years old.

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

4

national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.     The claimant was not under a disability, as defined in the Social Security Act, from October 1, 2001, through December 31, 2004 (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 415-424.)

Plaintiff brought suit in this Court on November 26, 2007, alleging in her Complaint that the Commissioner had wrongfully denied her DIB and SSI in violation of the Social Security Act, because the ALJ failed to apply the correct principles of law, and his decision was not supported by substantial evidence. Both sides filed Briefs in support of their respective positions, and the matter was referred to the Magistrate Judge, who issued his R&R on February 25, 2009. Plaintiff filed a timely Objection to the R&R on March 16.

## STANDARD OF REVIEW

### I.     Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). The court reviews *de novo* those portions of the R&R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court has reviewed the entire record, including the R&R and the Commissioner's objections. Pursuant to this review, the court concludes that the R&R correctly detailed the facts at issue and applied the correct principles of law. Accordingly, the court expressly adopts the R & R into this Order.

5

## II.    Commissioner's Final Determinations

The role of the federal judiciary in the administrative scheme established by the Social Security Act is narrowly tailored "to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). Section 205(g) of the Act provides, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2004). This determination of a claimant's disability status involves the following five-step inquiry:

> whether (1) the claimant is engaged in substantial activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P; (4) the claimant can perform [his or] her past relevant work; and (5) the claimant can perform other specified types of work.

*Johnson v. Barnhart*, 434 F.3d 650, 654 n. 1 (4th Cir. 2005) (citing 20 C.F.R.§ 404.1520(a)(4)(i)-(v) (2005).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that a claimant could perform. *See Walls*, 296 F.3d at 290. This determination requires a consideration of "whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). If the claimant is found to have the ability to adjust to other work, the Commissioner will not find her disabled. 20 C.F.R. § 404.1520(g)(2).

## **DISCUSSION**

The Magistrate Judge recommended that this Court affirm the Commissioner's decision not to give Plaintiff DIB and SSI. The Magistrate Judge found that the ALJ had applied the correct principles of law to Plaintiff's claim, and that the ALJ's conclusions were supported by substantial

evidence.  Plaintiff objected to the R&R, claiming that the Magistrate Judge incorrectly applied the rules to Plaintiff's case, and did not give adequate consideration to Plaintiff's nonexertional limitations in determining that she was disabled.

The main point of contention in this case is over the ALJ's use of the Medical-Vocational Guidelines, commonly referred to as "the Grids," in determining that Plaintiff was not entitled to DIB or SSI.  The Grids provide a lower threshold for a finding of disabled for people of advanced age and limited education and transferable skill level.  In the present case, the ALJ used Grid Rule 202.11 in finding that Plaintiff was not disabled.  Grid Rule 202.11 provides that a claimant who is closely approaching advanced age, defined as being between 50 and 54 years old, with a limited education and past semi-skilled or skilled work, no transferable skills, and the Residual Functional Capacity ("RFC") for *light* unskilled work, is not disabled and therefore not entitled to disability benefits.  The ALJ, after examining Plaintiff's claims, determined that she fit into this category, and was capable of light unskilled work, and therefore not entitled to DIB or SSI.

However, Plaintiff asserts that the ALJ was erroneous in his application of Grid Rule 202.11.  Instead, Plaintiff claims that the rule which should have been applied was Grid Rule 202.10, which provides that a claimant who is closely approaching advanced age, defined as being between 50 and 54 years old, with a limited education and past semi-skilled or skilled work, no transferable skills and the RFC for *sedentary* unskilled work is disabled and entitled to disability benefits from the Commissioner.  Simply put, if Plaintiff was capable of performing light unskilled work and could reasonably expect to find a job in that capacity, she was not entitled to disability benefits, but if she could only perform sedentary unskilled work, she should have been awarded benefits.

In making his decision, the ALJ thoroughly reviewed the medical evidence, assessed

8

Plaintiff's testimony, and determined that Plaintiff was able to perform unskilled work which required a light level of exertion.  Plaintiff claims that this was in error, because the ALJ based this conclusion only upon Plaintiff's exertional limitations, and did not consider Plaintiff's nonexertional limitations.

Plaintiff asserts, correctly, that in certain situations a person who is physically capable of performing an occupation which requires a light level of exertion may still be restricted to sedentary work because of nonexertional limitations.  This is explicitly stated in SSR 83-14, which provides:

> The major difference between sedentary and light work is that most light jobs–particularly those at the unskilled level of complexity–require a person to be standing or walking most of the workday.  Another important difference is that the frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type, i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist.  Unlike unskilled sedentary work, many unskilled light jobs do not entail fine use of the fingers.  Rather, they require gross use of the hands to grasp, hold, and turn objects.  Any limitation of these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.
>
> Where a person has a visual impairment not of Listing severity but causes the person to be a hazard to self and others–usually a constriction of visual fields rather than a loss of acuity–the manifestations of tripping over boxes while walking, inability to detect approaching persons or objects, difficulty in walking up and down stairs, etc., will indicate to the decisionmaker that the remaining occupational base is significantly diminished for light work (and medium work as well).
>
> On the other hand, there are nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational base.  Examples are inability to ascend or descend scaffolding, poles, and ropes; inability to crawl on hands and knees; and inability to use the finger tips to sense the temperature or texture of an object.  Environmental restrictions, such as the need to avoid exposure to feathers, would also not significantly affect the potential unskilled light occupational base.
>
> Where nonexertional limitations or restrictions within the light work category are between the examples above, a decisionmaker will often require the assistance of a VS.

SSR 83-14.  Plaintiff relies upon this Rule in arguing that the ALJ should have considered her

nonexertional limitations and determined that she should have possibly been limited to sedentary

work, which would have resulted in her being classified as disabled under Grid Rule 202.10.

However, Plaintiff's claim is without merit. As an initial matter, the Court notes that the ALJ

did give adequate consideration to Plaintif's nonexertional limitations. In his decision, the ALJ

wrote:

> [O]n November 7, 2003, Dr. E.W. Alford, the claimant's treating psychiatrist,
> prepared a medical source statement describing her mental condition (Exhibit 22F).
> Although Dr. Alford identified multiple mental symptoms as present in the claimant,
> more important is her assessment of the claimant's functional limitations resulting
> from her mental impairments (Exhibit 22F, page 6). Those limitations are not
> inconsistent with a functional capacity for unskilled work as described above. It is
> also interesting that Dr. Alford concluded that any disability of the claimant is
> primarily "medical" and that her mental impairment merely "complicated her ability
> to work." The claimant's attorney, at the supplemental hearing, argued on her behalf
> that her mental impairments are the primary condition making her disabled. As
> noted, the claimant's treating psychiatrist did not find those mental impairments to
> be disabling.

(Tr. at 422.) The ALJ also explicitly acknowledged that Plaintiff was somewhat limited in her

occupational opportunities due to her nonexertional limitations in his fifth finding. *See supra*. The

ALJ clearly considered Plaintiff's psychological nonexertional conditions and limitations, but did

not find them to negate her physical ability to perform light unskilled work.

Furthermore, Plaintiff's reliance upon Rule 83-14 is misplaced. A logical reading of that rule

does not, as Plaintiff seems to suggest, interpret it to mean that any nonexertional limitation may be

sufficiently severe that it could limit a claimant to sedentary work. Instead, Rule 83-14 stands for

the commonsense proposition that certain nonexertional limitations, like serious vision problems or

vertigo, make it impractical for one afflicted with such a condition to perform an unskilled light

position because they would be a liability to themselves and others if required to be on their feet and

moving around with any frequency, even though they otherwise possessed the physical capability

to stand, sit, walk, and lift that a job of light exertion required.

While Plaintiff asserts that "[i]n the present case, the Plaintiff was in a situation very similar to the hypothetical individual limited to light work with the restricted visual field," (Pl.'s Obj. At 4), this is simply not the case. An individual who could physically handle the demands of an unskilled light position but who had severe vision restrictions would, logically, be virtually unemployable in anything other than a position in which he or she could remain sedentary throughout the workday–that would be the only reasonable way that an employer could reasonably accommodate the person's conditions. Here, however, Plaintiff has alleged that she suffers from depression. Even setting aside the ALJ's assessment of the credibility of Plaintiff's claims regarding her mental conditions, Plaintiff has failed to provide any coherent explanation whatsoever as to why Plaintiff's depression would allow her to perform a sedentary occupation, but not an occupation which required a light level of exertion. There is no evidence or assertion that light exertion or movement would exacerbate Plaintiff's depression, or that Plaintiff's depression would be improved or better accommodated by remaining sedentary throughout the workday.

Accordingly, the Court holds that the ALJ did consider Plaintiff's nonexertional limitations but found that they did not inhibit Plaintiff's ability to perform unskilled light work, and therefore the ALJ did not err in analyzing Plaintiff's claim for benefits under Grid Rule 202.11.

Plaintiff also asserts that the testimony of the VE demonstrated that Plaintiff's claim for benefits should be examined in terms of whether or not Plaintiff was capable of sedentary, not light, work. During the supplemental hearing, the VE testified that due to Plaintiff's limitations, she could only perform about 20% of the total unskilled light positions in both the national and state economy. In considering this, the VE was specifically taking into account the ALJ's description of Plaintiff's

limitations, which were given to the VE as follows:

> [A]ssume the following restrictions: an individual who is limited to simple routine
> work, a low stress environment, and that's one I define as requiring few decisions,
> no more than occasional interaction with the public, no team effort or close working
> relationship with employees or co-workers, no ladders, no ropes, no scaffolds.

(Tr. at 611-12.) With these limitations in mind, the VE provided the ALJ with the positions of

garage attendant (DOT 915473010), security guard (DOT 372667038), and assembler (DOT

781687010). The VE testified that these three positions, when taken together, employed 5,400

people in South Carolina, and 950,000 people nationally.

When Plaintiff's attorney questioned the VE, he asked the VE if there were more light

unskilled positions which a person with Plaintiff's limitations could perform, or overall unskilled

sedentary positions. The VE responded that were substantially more unskilled sedentary positions

in both the state and national economy. According to Plaintiff, "[t]his suggests that the sedentary

rule should be used as a framework to direct a finding of disabled." (Pl.'s Obj. at 4.)

In fact, it suggests no such thing. The task of the ALJ in using the testimony of a VE to aid

in his determination as to the disability status of a claimant is not to determine which limitations

category has the most positions in which a claimant could work, or which category would be the

easiest one for a claimant to find a position. Instead, the task of the ALJ is to determine the highest

limitations category a claimant is capable of performing, and then to utilize the testimony of the VE

in determining whether or not there are a substantial number of occupations in that category which

a person with the claimant's limitations is capable of performing. The fact that a less strenuous

category has more positions available is of no consequence.

For example, if a claimant was capable of performing some medium exertion work, but had

limitations which prevented him or her from performing roughly half of the available medium

exertion positions, but he or she could perform all of the jobs in the economy which only required light exertion, there would of course be more job possibilities for the person at the light exertion level than at the medium exertion level.  According to Plaintiff's reasoning, this would mean that, for disability purposes, an ALJ should determine that the person could only perform in light exertion occupations, despite the fact that the hypothetical claimant could perform fully half of all available medium exertion jobs in the economy.  Such a contention is illogical, and has no legal support. Instead, the ALJ must determine the highest level at which a claimant can perform work, and the ALJ must then ascertain that there are jobs available at that level which a person of claimant's specific conditions and limitations could perform.  Here, the ALJ, after a thorough review of the medical evidence and testimony, determined that Plaintiff could perform light unskilled positions, and based upon the VE's testimony, determined that there are 5,400 jobs in South Carolina and 950,000 jobs nationally that fit into this limitation category that Plaintiff would have been able to perform during the time period in question.

Accordingly, this Court finds that the ALJ correctly applied the law to Plaintiff's case, and his conclusion that Plaintiff was not disabled from October 1, 2001, to December 31, 2004 was supported by substantial evidence.  Therefore, this Court adopts the Magistrate Judge's R&R and affirms the Commissioner's decision.

## CONCLUSION

The Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Even when a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. After a careful examination of the record as a whole, the Court concludes that the ALJ's decision to deny disability insurance benefits and supplemental security income was based on correct legal principles and was supported by substantial evidence. It is, therefore, **ORDERED**, for the foregoing reasons, that the Commissioner's denial of benefits is **AFFIRMED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**March 29, 2009**

14